1

2

3

4                         UNITED STATES DISTRICT COURT

5                       NORTHERN DISTRICT OF CALIFORNIA

6

7    IPLEARN-FOCUS, LLC,                      Case No.  14-cv-00151-JD

              Plaintiff,

8

         v.                                   ORDER RE SUMMARY JUDGMENT

9

10   MICROSOFT CORP.,

              Defendant.

11

12

13                              **INTRODUCTION**

14        Plaintiff IPLearn-Focus, LLC ("IPLearn") owns three patents related to learning by means

15   of a computer with a detached sensor.  The gist of the alleged inventions is that the computer uses

16   the sensor to monitor a student's behavior for signs of inattention or lack of concentration, and

17   when needed provides responsive cues.  Defendant Microsoft Corp. moves for summary judgment

18   of invalidity for all three patents under 35 U.S.C. § 101.  The Court grants the motion and

19   dismisses the case.

20                              **BACKGROUND**

21        IPLearn alleges that Microsoft infringes three of its patents: the 8,475,174 ('174) patent,

22   the 8,538,320 ('320) patent and the 8,538,321 ('321) patent.[1]  Dkt. No. 1.  IPLearn filed the patent

23   application that issued as the '174 patent on May 26, 2012, but that patent claims priority to a

24   patent application filed 16 years earlier.  '174 patent, Dkt. No. 1-3.  The patent applications that

25   issued as the '320 and '321 patents were filed on March 14, 2013, and those patents claim to the

26

27   _____

     [1] IPLearn asserts that Microsoft infringes these claims: '174 claims 2, 18, 22, 39, 41, 48 and 56;
28   '320 claims 1, 20, 21, 24, 30, 35, 41, 44, 48, 50, 63 and 73; and '321 claims 1, 4, 5, 12, 13, 26, 27,
     28, 34, 37, 39 and 52.  Dkt. No. 73 at 2.

United States District Court
Northern District of California

United States District Court
Northern District of California

same August 13, 1996 priority date as the '174 patent. '320 patent, Dkt. No. 1-1; '321 patent, Dkt. No. 1-2.

The three patents have similar specifications and very similar background and summary statements, and are for the most part overlapping. The patents claim the invention of "learning via a computing device, and more particularly to learning method and system using detached sensor." '321 patent, 1:20-22; *see also* '174 patent, 1:19-21; '320 patent, 1:20-22 (same). In all of the patents, IPLearn states that "at home and in schools, the computer is gradually becoming a major medium for education." *See, e.g.,* '321 patent, 1:23-24. The specifications describe harnessing the ubiquity of computers in service to "very personalized" computer-aided education based on monitoring a student's concentration and attention levels with a detached sensor. *Id*. at 1:23-33. As the '174 patent explains, living and breathing teachers have long relied on their "'intuition,' based on years of . . . teaching experience" to recognize when a student's concentration was flagging. '174 patent, 1:39-40. One "intuition" is that a student with dilating pupils "has lost focus." *Id*. at 1:41-42. Another "intuition" is that a student with a frown "is concentrating." *Id*. at 1:42-43.[2] "A good instructor constantly observes such concentration-sensitive behavior, and dynamically adjusts her teaching materials and styles accordingly." *Id*. at 1:44-46. These adjustments include telling the student "a joke" or asking a question "to 'wake her up.'" *Id*. at 1:46-51. The patents claim the use of a computer and detached sensor to monitor a student's concentration levels based on these intuitions and react accordingly. In essence, they claim a computer-implemented method of the tried-and-true practice of teachers in every culture and throughout history: keep an eye out for a wandering mind and, when necessary, motivate the student to focus.

The technical description of the invention is straightforward. As described in the '320 patent's Abstract, one embodiment typical of all three of the patents involves:

> a computer-implemented system helping a user learn using a detached imaging sensor…Through monitoring the user's volitional or involuntary behavior, the system determines whether to change

---

[2] The patents do not say why pupil dilation and frowning are strictly correlated to these attention levels. It seems equally likely they may signify other states of mind.

what is to be presented by the display.  The change could include providing rewards, punishments, and stimulation; or changing the materials.

'320 patent, Abstract.

More specifically, claim 1 of the '320 patent, which is also typical of the asserted claims in all the patents, reads:

> 1.   A computing system comprising:
>
> a display;
>
> an imaging sensor to sense a first feature of a user regarding a first volitional behavior of the user to produce a first set of measurements, the imaging sensor being detached from the first feature to sense the first feature, the first feature relating to the head of the user, and the first set of measurements including an image of the first feature, wherein the system further to sense a second feature of the user regarding a second volitional behavior of the user to produce a second set of measurements, the second feature not relating to the head of the user; and
>
> a processor coupled to the imaging sensor and the display, the processor to:
>
>> analyze at least the first set and the second set of measurements; and
>>
>> determine whether to change what is to be presented by the display in view of the analysis.

All the asserted claims describe systems, devices or methods that are substantially similar to this one.  The patents have some marginal differences in the type of sensor to be used (*e.g.,* optical vs. non-optical), the user features to be monitored (*e.g.,* eyes or facial orientation), and whether the system is connected to a network, but their claims largely overlap.

Microsoft contends that the patents are invalid under 35 U.S.C. § 101, as applied in *Alice Corp. Pty. Ltd v. CLS Bank Int'l*, ___ U.S. ___, 134 S. Ct. 2347 (2014), because the claims are directed to the abstract idea of teaching coupled to a generic computer implementation.  Dkt. No. 73.  In Microsoft's view, the patents do nothing more than purport to use a basic computer platform for the time-honored practice of making sure students are engaged.  Dkt. No. 73 at 1.

United States District Court
Northern District of California

3

# DISCUSSION

## I.       LEGAL STANDARDS

Under Rule 56 of the Federal Rules of Civil Procedure, a "court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *Bascom Research, LLC v. LinkedIn, Inc.*, No. 12-CV-06293-SI, 2015 WL 149480, at *3 (N.D. Cal. Jan. 5, 2015) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).  The moving party, however, has no burden to disprove matters on which the non-moving party will have the burden of proof at trial. *Id.*  The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case.  *Id.*

Once the moving party has met its burden, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by [the] depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (quotations omitted).  A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *Bascom*, 2015 WL 149480, at *4 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).  "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radios Corp.*, 475 U.S. 574, 586 (1986).  "If the [opposing party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Liberty Lobby*, 477 U.S. at 249-50.  "[I]nferences to be drawn from the underlying facts," however, "must be viewed in the light most favorable to the party opposing the motion." *Matsushita*, 475 U.S. at 587.

Resolving a question of patent eligibility is perfectly appropriate on summary judgment and does not need to wait on claim construction.  Construing disputed claim terms is not a mandatory precondition to determining Section 101 eligibility.  Rather, patentability is a threshold issue that a court may consider prior to claim construction.  *See Bancorp Servs. v. Sun Life*

United States District Court
Northern District of California

4

*Assurance Co. of Canada*, 687 F.3d 1266, 1273 (Fed. Cir. 2012) (finding "no flaw in the notion that claim construction is not an inviolable prerequisite to a validity determination under § 101," although the court went on to construe some of the terms); *see also Open Text S.A. v. Box, Inc.*, No. 13-CV-04910-JD, 2015 WL 269036, at *1 (N.D. Cal. Jan. 20, 2015). And Section 101 questions should be resolved as early as practicable in a case. As Judge Mayer of the Federal Circuit has stated:

> From a practical perspective, there are clear advantages to addressing section 101's requirements at the outset of litigation. Patent eligibility issues can often be resolved without lengthy claim construction, and an early determination that the subject matter of asserted claims is patent ineligible can spare both litigants and courts years of needless litigation.

*I/P Engine, Inc. v. AOL Inc.*, 576 F. App'x 982, 996 (Fed. Cir. 2014) (Mayer, J., concurring); *see also Bilski v. Kappos*, 561 U.S. 593, 602 (2010) (patent eligibility is a "threshold" issue); *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 717-20 (Fed. Cir. 2014) (Mayer, J., concurring). Claim construction is particularly unnecessary in this case because the basic character of the claimed subject matter is readily ascertainable from the face of the patent, and the parties' disputed constructions in no way affect the Court's analysis. Moreover, Microsoft has agreed to spot IPLearn the benefit of its proposed claim constructions if needed for this motion. Dkt. No. 73 at 11, n. 3. That will not be required but underscores the ripeness of the Section 101 determination without full claim construction.

 *Inter partes* review of the patents is also no reason to tap the brakes in this case. In October 2014, Microsoft petitioned the Patent Trial and Appeal Board ("PTAB") to institute *inter partes* review of all asserted claims of all three patents on obviousness and anticipation grounds. Dkt. No. 44, Exs. I, J, K. After this summary judgment motion was fully briefed, the PTAB declined to review any of the claims of the '320 patent, but did review a subset of the asserted claims of the '321 patent and all asserted claims of the '174 patent, and determined that Microsoft established a reasonable likelihood of prevailing on its challenges to the claims as either obvious or anticipated. Dkt. No. 87, Ex. A, B; Dkt. No. 96, Ex. A. Neither party has requested a stay of

United States District Court
Northern District of California

1   this motion while the PTAB process goes forward, and the Court sees no reason to impose a stay

2   or delay ruling on the motion.

3          Since the Supreme Court's decision in *Alice Corp. Pty. Ltd v. CLS Bank Int'l*, ___ U.S.

4   ___, 134 S. Ct. 2347 (2014), the test for determining patent eligibility under Section 101 is crystal

5   clear.  "Under the now familiar two-part test described . . . in *Alice*," the Court "'must first

6   determine whether the claims at issue are directed to a patent-ineligible concept,' such as an

7   abstract idea."  *OIP Techs., Inc. v. Amazon.com, Inc.*, ___ F.3d ___, 2015 WL 3622181, at *2

8   (Fed. Cir. June 11, 2015) (quoting *Alice Corp.*, 134 S. Ct. at 2355).  If so, the Court "must then

9   'consider the elements of each claim both individually and 'as an ordered combination' to

10  determine whether the additional elements 'transform the nature of the claim' into a patent-eligible

11  application.'"  *Id*. (quoting *Mayo Collaborative Servs. v. Prometheus Labs.*, 132 S. Ct. 1289,

12  1298, 1297 (2012)).

13         The second step of this test has been described "as 'a search for an 'inventive concept.''"

14  *Internet Patents Corp. v. Active Network, Inc.*, ___ F.3d ___, 2015 WL 3852975, at *2 (Fed. Cir.

15  June 23, 2015) (quoting *Alice Corp.*, 134 S. Ct. at 2355).  It is the make-or-break step for patent

16  eligibility because claims that are directed to excluded subject matter like abstract ideas, laws of

17  nature or natural phenomena may still be patentable if they have "an element or combination of

18  elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than

19  a patent upon the [ineligible] concept itself.'"  *Id*. (quoting *Alice Corp.*, 134 S. Ct. at 2355)

20  (alteration in original).  While "the boundary between abstract and patent-eligible subject matter"

21  is not always easy to define, the Court must undertake a "pragmatic analysis" of eligibility under

22  Section 101 to ensure the presence of an inventive concept so that the claim does not broadly

23  preempt practical uses of the abstract idea.  *Id*. at *3.  As the Supreme Court and the Federal

24  Circuit have made perfectly clear, merely implementing an abstract idea on conventional computer

25  technology is not enough.  "The statement that the method is performed by computer does not

26  satisfy the test of 'inventive concept.'"  *Id*. at *5; *see also Bilski*, 561 U.S. at 610-11 (limiting use

27  of an abstract idea "to a particular technological environment" insufficient for eligibility);

28  *Intellectual Ventures I LLC v. Capital One Bank (USA)*, ___ F.3d ___, 2015 WL 4068798 at *2

(Fed. Cir. July 6, 2015) ("simple instruction to apply an abstract idea on a computer is not enough"); *OIP*, 2015 WL 3622181, at *3 ("relying on a computer to perform routine tasks more quickly or more accurately is insufficient to render a claim patent eligible").

## II.     THE CLAIMS ARE NOT PATENT ELIGIBLE

### A.     The Claims are Directed to an Abstract Idea

IPLearn does not meaningfully dispute that the challenged claims in its patents are directed to the abstract idea of teaching.  A plain reading of the patents as a whole establishes beyond any reasonable dispute that they seek to implement on a computer the watchful eye of a good teacher, "who constantly observes[] concentration-sensitive behavior, and dynamically adjusts her teaching materials and style accordingly." '174 patent, 1:44-46.  This concept of a monitored response to presentations is an abstract idea, pure and simple.

IPLearn argues that any reliance on the specification to determine whether the asserted claims are directed at abstract ideas is inappropriate, and that the Court should focus on the minutiae of the physical components, like displays, processors, and sensors, recited by the claims. *See, e.g.*, '320 patent, claim 1.  That is not the right approach.  Claims "must be read in view of the specification, of which they are a part." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (en banc).  And in *Alice Corp.* and *Bilski*, the Supreme Court took a big-picture view that characterized the asserted patents based on the intrinsic evidence of the general concept they were directed to; it did not fixate on the specifics of the claim language.  *See Alice Corp.*, 134 S. Ct. at 2352 (finding asserted claims directed at "mitigating settlement risk" despite the fact that the claims did not mention those words); *Bilski*, 561 U.S. at 599 (finding claims directed at "hedging risk" though those words were not found in claims).

Moreover, even if the Court were to follow IPLearn's theory and ignore the specification, a review of the asserted claims reveals that they are written in even more abstract terms.  Take Claim 1 of the '320 patent, excerpted above, for example.  Put aside the parts reciting standard technology ("display," "imaging sensor," "processor," etc.), and what is left is "sens[ing]" two features of the user to generate measurements, "analyz[ing]" the measurements, and "determin[ing] whether to change what is to be presented by the display in view of the analysis."

1   '320 patent, claim 1.  In essence, the claim follows several steps involved in the abstract idea of

2   teaching, though without actually mentioning that specific application: the sensor observes

3   students and the processor analyzes their behavior and reacts accordingly.  The steps are an

4   abstraction, "addressed to fundamental human behavior related to instruction, which is apparent

5   when the steps are summarized without their generic references to [hardware]."  *IPLearn, LLC v.*

6   *K12 Inc.*, No. CV 11-1026-RGA, 2014 WL 7206380, at *6 (D. Del. Dec. 17, 2014).

7           The specification simply confirms the abstractness of the claims.  Figure 3 of all three

8   patents exemplifies this abstraction:



24   Whether taken individually or as an ordered combination, the claims are plainly directed at

25   implementing the simple and abstract ideas described in Figure 3 -- namely the abstract idea of

26   conventional teaching that not only happens in schools across the country every day, but has

27   "probably existed as long as there has been formal education."  *IPLearn,* 2014 WL 7206380, at

28   *6.

United States District Court
Northern District of California

United States District Court
Northern District of California

This finding applies with equal force to all of the asserted claims in the '174, '320 and '321 patents because they are all directed to this same abstract concept.  "Addressing each claim of the asserted patents" is therefore "unnecessary."  *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (internal citations omitted). All asserted claims recite the same basic system, device or method, and any variations in the claims do not change each claim's fundamental reliance on the abstract idea discussed above. IPLearn points to no asserted claim that would change the Court's Section 101 analysis.  There is no meaningful distinction between Claim 1 and the remaining asserted claims, which are "substantially similar and linked to the same abstract idea."  *Id.*

### B.      The Claims Lack An Inventive Concept

No inventive concept rescues the claims from ineligible abstraction.  The only novelty IPLearn asserts is to implement traditional teaching practices on a generic computer platform. None of the claims or specifications in the patents describes any hardware or software beyond commonly available computer processors, sensors, and displays.  In fact, the entire premise of the patents is the ubiquity of standard computer technology "at home and in schools."  *See, e.g.,* '321 patent, 1:23-27.

To overcome the absence of an inventive concept in the patents themselves, IPLearn leans heavily on *DDR Holdings, LLC v. Hotels.com, L.P.*, ___ F.3d ___, 2014 WL 6845152, at *12 (Fed. Cir. Dec. 5, 2014), for an eligibility lifeline.  In that case, the Federal Circuit recognized the possibility that solving a technological problem unique to the Internet could lead to patent eligibility.  IPLearn tries to run with that decision to contend that *DDR Holdings* supports eligibility for any claimed invention that purports to solve a problem involving computers.  *See* Dkt. No. 76 at 13-18.  But as the Federal Circuit recently explained, *DDR Holdings* is far more specific and limited:

> The patent at issue in [*DDR Holdings*] dealt with a problem unique to the Internet: Internet users visiting one web site might be interested in viewing products sold on a different web site, but the owners of the first web site did not want to constantly redirect users away from their web site to a different web site. The claimed solution used a series of steps that created a hybrid web page incorporating "look and feel" elements from the host web site with

commerce objects from the third-party web site. The patent at issue in *DDR* provided an Internet-based solution to solve a problem unique to the Internet that (1) did not foreclose other ways of solving the problem, and (2) recited a specific series of steps that resulted in a departure from the routine and conventional sequence of events after the click of a hyperlink advertisement. The patent claims here do not address problems unique to the Internet, so *DDR* has no applicability.

*Intellectual Ventures*, 2015 WL 4068798, at *6. In exactly the same way, IPLearn's claims fail to recite or disclose any non-routine or unconventional method for solving a uniquely Internet-based problem. IPLearn does not identify any way in which the claims "purport to improve the functioning of the computer itself" or "effect an improvement in any other technology or technical field." *See Alice Corp.*, 134 S. Ct. at 2359. Instead, the patents describe a routine computer-based application of the process of monitored instruction. This process "is not deployed to solve a specific Internet-centric problem. On the contrary, the patents just claim using it. That does not satisfy part two of the *Mayo/Alice* test." *Open Text*, 2015 WL 269036, at *5. As with the claims at issue in *Intellectual Ventures*, *DDR Holdings* is inapposite.

Moreover, the core issue addressed by the IPLearn patents is pedagogical, not technological. The patents are directed to monitoring and responding to student concentration, and this pedagogical issue does not exist exclusively or even predominantly in the computer realm. To the contrary, it is a problem that arises every day in every teaching situation in the world. Nothing in the patents solves a technological problem.

IPLearn's patents also threaten broad preemption of an abstract concept. *Alice* cautioned courts to "distinguish between patents that claim the building blocks of human ingenuity and those that integrate the building blocks into something more." *Alice Corp.*, 134 S. Ct. at 2354 (quotations and citation omitted). Here, the claims potentially preempt much of a building block of human ingenuity -- the concept of monitored interaction with a participant or audience. As Microsoft notes, this building block underlies countless methods for presenting interactive content to an audience in a dynamic and engaging way -- in online educational services, for example, or in delivery of a wide variety of entertainment content, or in business meetings and events, just to name a few sizable areas of potential preemption. The fact that the patents describe a wide variety of alternative configurations of generic hardware only underscores their potential to preempt

virtually all practical implementations of the concept.  Such broad claims jeopardize future innovation disproportionately "relative to the contribution of the inventor."  *Mayo*, 132 S. Ct at 1303.

While IPLearn claims its patents do not preempt all methods of computerized teaching because the claims do not cover the use of a mouse and keyboard or an attached sensor (as opposed to a detached sensor), the prohibition against patenting "abstract ideas 'cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment,' despite the fact that doing so reduces the amount of innovation that would be preempted."  *Open Text S.A.*, 2015 WL 269036, at *4 (quoting *Alice Corp.*, 134 S. Ct. at 2358); *see also OIP*, 2015 WL 3622181, at *3 ("that the claims do not preempt all price optimization or may be limited to price optimization in the e-commerce setting do not make them any less abstract.").  And IPLearn's disclaimer of preemption smacks of false modesty.  At a time when computers and interactive technology are moving rapidly away from the use of wires, cables and other hard connections, IPLearn's quitclaim for systems physically attached to a subject is hardly generous.

## CONCLUSION

Because the claims of the '174, '320, and '321 patents do nothing more than recite the abstract idea of observing students, analyzing their behavior and reacting accordingly, along with an instruction to implement the idea using various pieces of generic computer hardware, the claims are not directed to patentable subject matter.  Consequently, the Court grants the motion for summary judgment with prejudice and directs the clerk to enter judgment for Microsoft and to close the case.

**IT IS SO ORDERED.**

Dated: July 10, 2015

_____
JAMES DONATO
United States District Judge

United States District Court
Northern District of California